2022 IL App (2d) 180270
No. 2-18-0270
Opinion filed January 13, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-DT-45 |
| BRIAN J. McNALLY, | ) ) | Honorable Robert Villa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Hutchinson and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Brian J. McNally, was charged with one count of driving under the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2016)) on January 10, 2018. He subsequently filed a petition to rescind his statutory summary suspension (SSS) and a motion to strike and dismiss the SSS. The trial court denied both on March 9, 2018. This appeal followed.

¶ 2                              I. BACKGROUND

¶ 3 Defendant was arrested and charged with one count of driving under the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2016)) on January 10, 2018. Defendant refused to take a chemical test to determine his blood-alcohol level. The law officer's sworn report issued to defendant noted that his refusal took place on January 10—Officer Anson signed the report on the same day.

However, the report stated that defendant was given notice of his SSS on January 18. Defendant filed his petition to rescind the SSS on January 23.

¶ 4 On January 26, the State filed a motion to amend the sworn report, noting that Anson had "incorrectly listed the notice date" on the report. The notice of motion did not contain a hearing date on the motion. While the case was not on the call, it arose in court on January 29. The State moved for a continuance, and hearing on the petition to rescind was set for February 9. The court received a notice from the Office of the Secretary of State on January 31, stating that it could not suspend or revoke defendant's driver's license, because it needed to verify the arresting officer's signature date.

¶ 5 On February 9, defendant answered ready-for-hearing on his petition to rescind but noted no confirmation in the court file that there was notice or a defect in the sworn report. The State explained that Anson had already filed a new report and, indeed, there was no confirmation on file. Defendant argued that the State could not proceed on the petition without confirmation on file, and further, the State had not set the motion to amend for hearing. The court then continued the case on the State's motion until February 16. Defendant then filed a motion to strike and dismiss the SSS, arguing that Anson improperly amended his defective sworn report and filed it with only the circuit clerk; however, Anson also needed to submit it to the Secretary of State, the court, and defendant. The amended report did not indicate the manner of service. In addition, there had been no hearing on the State's motion for leave to amend the original defective sworn report.

¶ 6 On February 16, defendant was in the courtroom without his attorney at 9:35 a.m. Defendant explained that he "just went outside to call [counsel] and they said he's in the building, and he should be here soon." The State noted that counsel had not checked in with the clerk yet and asked to amend the sworn report. The court struck defendant's petition to rescind "for failure

to present it today" and allowed the State to amend the sworn report "to correct the second sworn [report] that was previously sent" by Anson and which had been confirmed by the Secretary of State. The State tendered a copy of the second amended sworn report to defendant in open court. The court then set the matter for status.

¶ 7     The court recalled the case minutes later when counsel arrived explaining that, because "[t]he State's Attorney's Office only had one Prosecutor" in the branch court, he "got stuck in line." The court explained:

> "[T]he procedure in the courtroom is that you have to let them know before 9:30 what you're going to do. You didn't have a chance to do that, you're here now, but the officers have been released."

¶ 8     The court then heard argument on the motion to strike and dismiss. The State explained that it "did understand the defects that were in the original and second sworn reports that were filed" and wanted to amend the sworn report to:

> "comply with the case law *** because there was a confirmation on file but we wanted to address the defects in there and make sure Defense [*sic*] had proper [n]otice of a proper sworn report."

¶ 9     Defendant argued that the Secretary of State's confirmation in the court file stated that the SSS would be effective on February 25, 2018. While the amended sworn report alleged that defendant was given notice of his suspension on January 10, the sworn report had been amended "at or around" February 7. Thus, the State gave defendant 18-days' notice instead of the statutorily required 46.

¶ 10     The State told the court that it planned to fax a copy of the second amended sworn report that day to a contact in the Office of the Secretary of State in an attempt to get a confirmation of

suspension on the second amended report "that will immediately affect his new suspension date before the 25th." Therefore, defendant's suspension would not take effect until 46 days from that day—February 16. Defendant argued:

"I don't think that they should be able to do that because then 46 turns into 65 turns into 70, the State can keep amending the sworn report and keep pushing that suspension date off, Judge, down the road until they get it right. That's not the intent of the law, that's clearly not the intent of suspensions that are supposed to be short processes, Judge. They cannot just kick the can down the road until they get it correct."

The State responded:

"I think if you want to continue this matter to February 26th and if the Defendant's license is suspended on that date and hasn't been fixed, we have a completely different issue, here, and at that point, I think this would be proper to rescind that suspension."

¶ 11    The court continued the case to February 23, two days before defendant's suspension was scheduled to take effect based on the notice date contained in the first amended sworn report. Defense counsel agreed with the continuance, saying, "Yes—uhm—that—I understand that, Judge, and it's fine—uhm—I—I mean I think that that's what needs to happen at this point, Judge." Defendant filed a new petition to rescind the SSS that afternoon.

¶ 12    On February 23, the State provided a driver's abstract that showed that the suspension that was to take effect on February 25, based on the first amended sworn report, had been "taken out of the system." The State also provided a new confirmation that provided for a SSS to be effective on April 3, 46 days after the date of the second amended report. The record contains a copy of this amended confirmation, file-stamped February 28. Defendant raised his objection to the State's second amendment of the sworn report again, arguing that the State never provided proper notice

of its intention to proceed on a motion to amend, in violation of local and supreme court rules, and proceeded without defense counsel being present. As a result, "even though they fixed it in the computer," the second amendment was a "nullity because of the notice issue," and defendant was entitled to a recission of the SSS.

¶ 13    The court saw the issue as "a result of the way in which the Court runs the Friday call in this courtroom." The State's actions at issue were done "with the permission of the Court, given the way that I run up until 9:30 without any information about whether you are going forward with a call." The court recognized that counsel had been in the branch court and "couldn't get out of there" and apologized "for the manner [in which] it is run." The State seeking leave to amend without counsel being in court "would have been the ordinary course that I would allow [it] to do here in court." The court then reserved its ruling on defendant's motion to strike until the recission hearing scheduled for March 9.

¶ 14    Defendant filed a supplemental motion to strike and dismiss the SSS that incorporated his prior arguments and added additional claims, praying that the court grant the motion to strike and dismiss the SSS with prejudice and "[r]escind said suspension immediately and notify the Secretary of State." After extensive oral argument on March 9, the court denied the motion to strike and dismiss, finding that the second amended sworn report was "appropriate" and "cured defective pleadings." The court found no prejudice to defendant; "it actually doesn't surprise [defendant] anyway unless he's surprised that he can drive for another 45 days." The court then held a separate hearing on defendant's petition to rescind the SSS, which the court denied after defendant's case concluded. Defendant now appeals only the court's decision denying the motion to strike and dismiss the SSS.

¶ 15                                    II. ANALYSIS

¶ 16    We start by considering the State's contention that the issues raised by defendant are moot, as his suspension already terminated on April 3, 2019. In general, Illinois courts do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how they decide those issues. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). A case on appeal becomes moot when, after the appeal is filed, events render it impossible for the appellate court to grant the complaining party effectual relief. *Davis v. City of Country Club Hills*, 2013 IL App (1st) 123634, ¶ 10. "When a decision on the merits would not result in appropriate relief, such a decision would essentially be an advisory opinion." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. Here, as defendant's suspension has already terminated, any determination of defendant's contentions will not affect the suspension of his driving privileges.

¶ 17    The issue presented in this type of situation is not the validity of the underlying judgment or whether the case is moot; instead, the question is whether there is an exception to the mootness doctrine that would allow this court to consider defendant's claims. See *In re Alfred H.H.*, 233 Ill. 2d at 351. There are three established mootness exceptions: (1) the case involves an issue of great public importance (the public interest exception), (2) the case falls into the category of one that is capable of repetition but evading review, and (3) the order appealed from has collateral consequences such that it could return to plague the complainant in some future proceedings or could affect other aspects of the complainant's life (the collateral consequences exception). See *id.* at 355-63; *Koshinski v. Trame*, 2017 IL App (5th) 150398, ¶ 20.

¶ 18    Defendant argues that all three exceptions apply in this case. The State, while arguing that no exception applies here, concedes that, "to the extent that the record establishes that defendant is a 'first offender' within the meaning of 625 ILCS 5/11-500 (2016), the collateral consequences

exception to mootness could allow for appellate review, even though the summary suspension has terminated." We agree. A "first offender" under section 11-500 of the Vehicle Code includes a person who has not had a license suspension for violating section 11-501.1 within 5 years of the current offense. See 625 ILCS 5/11-500 (West 2016). First offenders can potentially regain certain driving privileges, such as a restricted driving permit or a permit to drive with a monitoring device. See *id.* §§ 6-206.1, 6-208.1. With this suspension on his driving record, the State would consider defendant to be a "second offender" were he to be charged with another DUI offense in the next five years, and, thus, he would be ineligible for such limited privileges. Further, the appearance of a suspension on a driving record can impact insurance rates and the ability to obtain certain types of future employment. The potential collateral consequences of a suspension of driving privileges are sufficient to invoke the collateral-consequences exception to the mootness doctrine.

¶ 19    Defendant first contends that the Secretary of State should have returned the amended sworn report instead of confirming it. Section 11-501.1(h) of the Vehicle Code provides that "the Secretary of State shall confirm the statutory summary suspension *** by mailing a notice of the effective date of the suspension or revocation to the person and the court of venue." *Id.* § 11-501.1(h) (West 2018). Further,

> "should the sworn report be defective by not containing sufficient information or be completed in error, the confirmation of the statutory summary suspension or revocation shall not be mailed to the person or entered to the record; instead, the sworn report shall be forwarded to the court of venue with a copy returned to the issuing agency identifying any defect." *Id.*

According to defendant, the amended sworn report was defective because Anson had back-dated the notice date and had failed to indicate how notice had been served on defendant. Defendant then

argues that "courts have affirmed recission because the 'sworn report *failed to establish on its face the validity of the suspension*.' " (Emphasis in original.)

¶ 20    While the defective nature of the amended sworn report was acknowledged by all and was the subject of argument at the hearing, the factual accuracy of the amended report and its confirmation are irrelevant. The second amended report, not the amended report, was the basis for the suspension of defendant's driving privileges. Defendant makes a chaotic argument, eventually claiming that the State never attempted to amend the amended report and that any leave to amend granted by the court must have applied to the original sworn report. This claim is rebutted by the common-law record, as the court's order of February 16, 2018, stated, "People are granted leave to Amend the Law Enforcement Sworn Report and file a copy with the Court today." The second amended report was filed and dated on February 16, 2018, and is the next page in the record. Defendant fails to provide a coherent, let alone a persuasive, argument supporting his claim, and we find no error here.

¶ 21    Defendant next contends that, by striking his petition to rescind because defense counsel was not present at the appropriate time, the court violated his right to due process. Section 2-118.1(b) of the Illinois Vehicle Code (Code) (*id*. § 2-118.1(b)) unambiguously provides that a defendant "shall" be given a hearing on his petition to rescind within 30 days after the petition is received. See *People v. Moreland*, 2011 IL App (2d) 100699, ¶ 8. Failure to hold a hearing within 30 days is a violation of due process rights requiring the recission of the defendant's suspension. *In re Summary Suspension of Driver's License of Trainor*, 156 Ill. App. 3d 918, 922 (1987). However, a defendant is not entitled to recission where the defendant caused the hearing delay. See *Moreland*, 2011 IL App (2d) 100699, ¶ 10. Here, defendant filed his initial petition on January 23, 2018. The court struck that petition on February 16, and defendant filed a new petition that

same day. The court heard and denied that petition on March 9, which was 45 days after defendant's initial petition was filed but 21 days after the court struck the initial petition and defendant filed a new petition.

¶ 22    Defendant first argues that his right to a hearing within 30 days of filing a petition "dictates against Judge Villa's 'word-of-mouth' courtroom procedure of striking petitions if the attorney doesn't check-in on time." According to defendant, the court's rule conflicts with section 2-118.1(b) of the Code, limits and burdens the constitutional protections provided by the Code, and deprives a defendant of his statutory and constitutional rights to a hearing within 30 days. We note, however, that defendant did not raise this issue below. While defense counsel told the court that it was surprised at the procedure ("I about fell out of my chair"), he did not argue that the procedure violated defendant's due process rights. When the court offered "to put a standing order on that," counsel responded, "You don't have to. We'll accept it." Defendant omitted this argument in his supplemental motion to strike and dismiss the SSS. An appellant who fails to raise an issue in the trial court forfeits it and may not raise it for the first time on appeal. *Williams v. Bruscato*, 2019 IL App (2d) 170779, ¶ 24. Therefore, we find this argument forfeited.

¶ 23    Defendant then argues that, as the 30-day rule is mandatory, striking his petition on day 24 of the 30-day period "is a *per se* violation of his due process rights." Further, the 30-day period for holding a hearing did not restart upon the filing of the new petition to rescind on February 16. Defendant relies on *Moreland*, 2011 IL App (2d) 100699, for support. In *Moreland*, the defendant filed a petition to rescind the SSS on May 4, 2010. No confirmation of suspension was in the court file on the first scheduled court date of May 21. The court continued the matter over the defendant's objection and, after initially advising the defendant that the 30-day period for a hearing would not be tolled, instead struck the petition over the defendant's objection. *Id*. ¶ 3. A confirmation was

filed with the court on May 24. On June 4, 31 days after he filed his petition to rescind, the defendant moved to rescind the suspension, arguing that he was not given a hearing within 30 days after filing his petition. On June 7, the court granted the defendant's motion to reinstate his petition. Then, it "reluctantly" granted the petition to rescind, noting that the defendant was not given a hearing within 30 days after he filed his petition and that the delay in holding the hearing was not attributable to the defendant. *Id.* ¶ 4.

¶ 24 We affirmed, finding that section 2-118.1(b) of the Code unambiguously requires that a defendant be granted a hearing on his petition to rescind within 30 days after it is filed in the circuit court. *Id*. ¶ 8. We further found that the defendant acted promptly in challenging the suspension and was not obligated to reinstate his petition after the Secretary of State confirmed the suspension, as that would require "reading into section 2-118.1(b) conditions that the legislature did not provide." *Id*. ¶ 10. However, we noted:

"courts have carved out an exception to the automatic rescission of the statutory summary suspension of a defendant's driving privileges if the defendant is not given a hearing within 30 days after filing a petition to rescind. Pursuant to that exception, a defendant is not entitled to a rescission if the defendant caused the hearing to be delayed." *Id.*

¶ 25 In *Moreland*, the defendant did not cause the delay in hearing his petition to rescind. The Secretary did not confirm the suspension before the first court date, the court struck the petition, and the matter continued beyond 30 days from defendant's filing. During that period, the Secretary of State confirmed the suspension. Whereas here, the delay in hearing defendant's petition was attributable to defendant. While he was similarly unable to have a hearing on the first court date because of the lack of a confirmation, the cause was continued to the 24th day after the filing of the petition, and the court struck the petition because defense counsel was late for the hearing. The

second petition was heard and denied 14 days after filing. As the delay in hearing defendant's petition was caused by defendant, we find no error here.

¶ 26 Defendant next contends that the court erred in dismissing his motion to strike and dismiss the second amended sworn report because defendant did not receive notice of suspension until the hearing date. According to defendant, the State served him in court with a new sworn report indicating that defendant received "immediate" notice of summary suspension on February 16, 2018, "the day of the original hearing date on the petition to rescind;" thus, "it was as if he never received notice."

¶ 27 Defendant's contention fails. First, defendant argues as if his original petition to rescind still existed and was relevant. It did not and was not. That petition was stricken on that morning when defense counsel was late for the call, and the officer was allowed to leave. No matter the sworn report's character ("second amended" or, as defendant alleges, "new"), service was accomplished *after* the petition to rescind was stricken. This service was, as the report stated, immediate. We do not know how the State's attempt to amend the sworn report would have proceeded if counsel had been on time for the call—that is mere speculation. However, defendant did not receive notice of suspension on the hearing date, as the hearing on defendant's petition was not held until March 9 and he was previously given notice on February 16.

¶ 28 Defendant also argues that the State's notice regarding the second amended sworn report did not comply with the applicable rules of service. In general, the rules of civil procedure apply to SSS hearings. See 625 ILCS 5/2-118.1(b) (West 2016) (SSS hearings "shall proceed in the court in the same manner as in other civil proceedings"). Defendant asserts that civil rules of procedure regarding service apply as well. See, *e.g.*, 735 ILCS 5/2-201 (West 2016); Ill. S. Ct. R. 12 (eff. July 1, 2017); Ill. S. Ct. R. 101 (eff. July 17, 2020). Courts have held that an officer's sworn report

acts as a complaint in a civil case—it initiates the defendant's license suspension. See *People v. Palacios*, 266 Ill. App. 3d 341, 342 (1994). Therefore, according to defendant, service of the sworn report must be in the form and manner specifically set forth in supreme court rules, statutes, and case law; as he did not receive notice of suspension until he appeared in court on February 16, 2018, "it was as if he never received notice."

¶ 29   We disagree. First, while courts have likened the sworn report to a complaint in a civil case, it is not a pleading, let alone a complaint:

> "The police officer's sworn report is the action which begins the administrative process of a driver's license suspension. It does not initiate any court proceeding. In fact, it is the defendant's motion to rescind a statutory summary suspension that begins any court proceeding on the matter. We hold that the police officer's sworn report is not a pleading or 'other paper' within the meaning of Supreme Court Rule 137." *People v. Donnelly*, 327 Ill. App. 3d 1101, 1105 (2002).

Defendant received in-person service of the second amended sworn report in open court immediately upon the court's striking of defendant's petition to rescind. Defendant filed a new petition to rescind later that day, and a hearing on the petition was held on March 9. Defendant fails to demonstrate how he did not properly receive service, and we find no error here.

¶ 30   Defendant next contends that the court erred by granting the State's oral motion to amend the sworn report. We review a trial court's ruling on a motion to amend a sworn report for an abuse of discretion. See *People v. Farris*, 2012 IL App (3d) 100199, ¶ 26. An abuse of discretion occurs only where no reasonable person would agree with the position adopted by the trial court. *Id.*

¶ 31   Defendant argues that he should have been given notice of the State's intention to seek a hearing on its motion for leave to amend the law enforcement sworn report on February 16; the

State had merely sent notice of filing. According to defendant, the Code of Civil Procedure and various local court rules govern the amendment of pleadings in this case. However, defendant's argument fails for several reasons.

¶ 32     First, we again note that, while the sworn report has been *likened* to a complaint, it is not a pleading. See *Donnelly*, 327 Ill. App. 3d at 1105. Second, it is well established that an officer's sworn report may be amended to correct errors even during the hearing on the petition to rescind the suspension. See *People v. Badoud*, 122 Ill. 2d 50, 60-61 (1988) ("Considering that the General Assembly obviously intended suspension hearings to be expedited (see Ill. Rev. Stat.1985, ch. 95½, ¶ 2-118.1), and considering the fact that requiring prehearing amendments to the sworn report could delay the hearing date, we see no impropriety in swearing to the report at the hearing."); *People v. Wyzgowski*, 323 Ill. App. 3d 604, 606 (2001) ("An officer's sworn report may be amended at the hearing on the petition to rescind the suspension."). Here, the amendment was allowed, not at the hearing on defendant's petition, but *after* defendant's petition had been stricken and weeks before the hearing on defendant's refiled petition. Defendant cites to no caselaw that imposes as strict an application of civil procedural rules to a SSS hearing as he recommends.

¶ 33     Even if we applied the standard abuse-of-discretion analysis for amended complaints, we would find no error here. In such an analysis, courts generally must decide whether (1) the proposed amendment would cure the defective pleading, (2) the other parties would sustain prejudice or surprise under the proposed amendment, (3) the proposed amendment is timely, and (4) previous opportunities to amend the complaint could be identified. *Farris*, 2012 IL App (3d) 100199, ¶ 27. Here, the amendment cured the defects in the sworn reports. Defendant was not prejudiced by the amendment, as it came *after* his petition was already stricken—consequently, he needed to file a new petition if he wanted to seek recission. For the same reason, there was no

surprise because his hearing was still weeks away. Finally, the State had attempted to amend at the first court date, and the amendment, as we have explained, was timely. Perhaps the analysis would have been different if defendant's initial petition had not been stricken, but we need not speculate. Based on the facts here, we cannot conclude that the court abused its discretion, and we find no error.

¶ 34 Defendant next contends that the court abused its discretion in directing the State to contact the Secretary of State to remove the amended sworn report's confirmation and confirm the suspension based on the second amended report. According to defendant, the State lacked the authority to "effectuate the removal of the 1st sworn report—*especially when it had already been confirmed*." (Emphasis in original.) Where the prosecutor was seeking to remove a confirmed suspension from a driver's record, a "*lawfully executed court order*" (emphasis in original) is needed "to protect the integrity of the records kept by the Secretary of State."

¶ 35 Defendant fails to recognize that there was a lawfully executed court order, dated February 16, 2018, that stated that defendant's petition was stricken without prejudice and that the State was "granted leave to Amend the Law Enforcement Sworn Report and file a copy with the Court today." The State was not performing some unauthorized, adjudicative or quasi-judicial action on its own. We also conclude that the State's faxing of information to the Secretary of State is of no real consequence. Defendant fails to cite any authority limiting the methods to inform the Secretary of State of such an action. Our supreme court has found that the General Assembly "obviously intended suspension hearings to be expedited," such as here, where the court approved the correction of sworn-report errors at the hearing. See *Badoud*, 122 Ill. 2d at 60-61. We similarly conclude that the court committed no error in allowing the State to fax a court-ordered amended sworn report to the Secretary of State.

¶ 36                                      III. CONCLUSION

¶ 37    For these reasons, we affirm the judgment of the circuit court of Kane County.

¶ 38    Affirmed.

**No. 2-18-0270**

| | |
|---|---|
| **Cite as:** | *People v. McNally*, 2022 IL App (2d) 180270 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 18-DT-45; the Hon. Robert Villa, Judge, presiding. |
| **Attorneys for Appellant:** | Rachel J. Hess, of St. Charles, for appellant. |
| **Attorneys for Appellee:** | Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Barry W. Jacobs, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |